UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

___

WILLIE J. HARRIS,

        Plaintiff,                             Case No. 2:16-cv-260

v.                                                   Honorable Paul L. Maloney

J. LeCLAIRE, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Jondreau, Collins, Place, Minton, Oh, and Unknown Parties. The Court will serve the complaint against Defendant LeClaire.

**Discussion**

    I.    <u>Factual allegations</u>

Plaintiff Willie J. Harris, a state prisoner currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Prison Counselor J. LeClaire, Resident Unit Manager W. Jondreau, Pharmacy Assistant Jennifer L. Collins, Warden S. Place, Account Tech T. Minton, Doctor Chung Oh, and Unknown Parties Mail Room Staff. Plaintiff states that Defendants LeClaire, Minton, and Unknown Parties destroyed outgoing mail that had sent to his sister Odella on May 7, 2016, and June 13, 2016. Plaintiff discovered this on June 28, 2016, when he spoke to his sister on the phone. Plaintiff claims that Defendants LeClaire, Minton, and Unknown Parties falsified documentation and improperly charged Plaintiff's prison account for postage in order to make it look as if they had sent out Plaintiff's mail.

Plaintiff claims that on June 9, 2016, Defendant LeClaire refused to process legal mail addressed to MDOC Director Heidi E. Washington because it did "not meet the criteria of legal mail." However, Defendant LeClaire refused to return the mail to Plaintiff. In addition, Plaintiff states that Defendant LeClaire repeatedly forced Plaintiff to forfeit his yard and declined to call Plaintiff out to process his legal mail except during yard time, despite the fact that Plaintiff sent kites requesting to be called out before yard at 9:00 a.m. Instead, Defendant LeClaire continued to make legal mail rounds after Plaintiff's regular yard schedule. Plaintiff states that this forced him to forego yard in order to get his legal mail processed. Plaintiff confronted Defendant LeClaire about this issue and was told, "You filed a grievance on me about the issue good luck with that."

Plaintiff alleges that on July 18, 2016, Defendant LeClaire called Plaintiff to his office to process his legal mail, which was addressed to the 63rd District Court. Plaintiff suspected that Defendant LeClaire did not send his mail out because he knew it was a lawsuit, so he called his sister and had her check to see if his complaint had been received by the 63rd District Court. His sister discovered that Plaintiff's filing had not been received by the court.

Plaintiff confronted Defendant LeClaire about his outgoing mail and Defendant LeClaire stated, "So what? I don't care, sue me. Just make sure you spell my name correct." Later that day, Defendant Place told Plaintiff to go ahead and sue because "we always win." Plaintiff filed a grievance regarding the missing mail. Defendant Jondreau discussed the grievance with Plaintiff, stating that Plaintiff could not prove that prison officials interfered with his mail as long as they possessed documentation showing that it had been sent out. However, Defendant Jondreau did not show Plaintiff any such documentation.

Plaintiff alleges that Defendants Collins and Oh have refused to give him his prescribed medical treatment for his skin condition. Plaintiff claims that he is to receive coal tar ointment, but that medical staff claimed that his order had expired. Plaintiff claims that he was denied treatment from March 28, 2016, until May 6, 2016, which resulted in unnecessary suffering for Plaintiff. On June 9, 2016, Plaintiff submitted a request for a refill of the coal tar ointment, to no avail. When Plaintiff showed Defendant Collins his painful sores, rash, and hives, she told him that it was not an emergency and that Defendant Oh was aware of Plaintiff's request and was going to prescribe a replacement treatment for Plaintiff because they did not have coal tar ointment in stock.

On June 28, 2016, Plaintiff had to be called out as a medical emergency patient. Defendant Oh noted Plaintiff's symptoms and ordered a steroid / Benadryl injection. Plaintiff asked Defendant Oh why he had not ordered a replacement treatment. Plaintiff discovered that Defendant Collins had never informed Defendant Oh that a replacement treatment was needed. In addressing Plaintiff's grievance regarding this issue, the step II respondent, Patricia Lamb, RN, BSN, stated:

> Grievant claims that he has been denied timely provision of coal tar ointment.
>
> Review of the electronic medical record reveals that grievant arrived at AMF on 3/28/16 with a nearly expired order for coal tar. (It expired on 3/31/16). The matter was referred to the medical provider who addressed the issue on 4/8/16. Per documentation of that visit, coal tar was not ordered in favor of a different topical treatment. After grievant continued to request coal tar and reported that the new treatment plan was ineffective, the coal tar was re-ordered on 5/5/16 and issued to grievant on 5/6/16. Grievant requested a refill of this product on 6/10/16. However, it was on back order from the off-site pharmacy and could not be immediately filled. It was eventually received from the pharmacy and issed to the grievant on 6/29/16.
>
> It is acknowledged that there was a delay in provision of the requested coal tar refill in June. However, the back order and subsequent delay in shipment from the off-site pharmacy was not within the control of AMF Health Care. In the event a similar situation occurs in future, suggestions for alternate interventions have been reviewed with AMF staff.
>
> No further remedy may be offered at this time.

*See* ECF No. 1-5, PageID.45.

Plaintiff claims that Defendants' conduct violated his constitutional rights and seeks compensatory and punitive damages, costs, and equitable relief.

### II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff appears to be claiming that Defendants Oh and Collins violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation

marks omitted).The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

In this case, as noted above, Defendant Oh prescribed a course of treatment upon Plaintiff's arrival at AMF, which Plaintiff did not feel was effective. Plaintiff's treatment of choice was subsequently reinstated. When Plaintiff requested a refill on June 10, 2016, the pharmacy did not have coal tar ointment in stock and Defendant Collins told Plaintiff that the medical provider would order a replacement treatment. According to Plaintiff, Defendant Oh was not aware of this issue and Plaintiff was denied treatment until June 29, 2016, which resulted in a exacerbation of Plaintiff's symptoms. Plaintiff also states that Defendant Collins and Defendant Oh both claim that there was a miscommunication, and that this was the cause of the delay in Plaintiff's treatment.

The Court notes that the deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("conduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety"). As the Supreme Court explained:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38 (citations omitted). Thus, accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner. *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather, what is required is a conscious disregard of a substantial risk of harm. *Farmer*,

511 U.S. at 839. The Court concludes that Plaintiff's allegations against Defendants Oh and Collins do not support a finding of deliberate indifference. Rather, at most, these allegations rise to the level of negligence. Therefore, Plaintiff's Eighth Amendment claims against Defendants Oh and Collins are properly dismissed.

Plaintiff complains about two instances in which he was prevented from sending letters to his family by Defendants LeClaire, Minton, and Unknown Parties. Generally, "isolated instances of interference with prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, 229 F.3d 1152 (6th Cir. 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation.")); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing Johnson for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation). Moreover, these claims are entirely conclusory as Plaintiff fails to allege any facts in support of his assertion that his sister's failure to receive mail was the result of the actions of Defendants LeClaire, Minton, or Unknown Parties. In fact, Plaintiff fails to allege facts showing that these individuals had any involvement in the handling of the two letters to his sister. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-69 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, these claims are properly dismissed.

The Court notes that Plaintiff fails to make specific factual allegations against Defendants Jondreau and Place, other than generally claiming that they failed to conduct an

investigation in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Jondreau and Place engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Finally, the Court notes that Plaintiff's claim that Defendant LeClaire interfered in his outgoing legal action, which was addressed to the 63rd District Court, is not clearly frivolous. Therefore, Plaintiff's claim against Defendant LeClaire for interference of out-going mail is not properly dismissed at this time.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Jondreau, Collins, Place, Minton, Oh, and Unknown Parties will be

dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendant LeClaire.

An Order consistent with this Opinion will be entered.


Dated:  January 13, 2017              /s/ Paul L. Maloney
                                      Paul L. Maloney
                                      United States District Judge